With that, we'll turn to the final case on the argument calendar today, United States v. Scott. I'll reserve five minutes for rebuttal. Steve Hormel on behalf of Mr. Scott. There's several issues in the case, but I'm going to try to sort of combine a couple of them and field the Court's questions on any of the issues. The first issue is whether or not there was sufficient evidence of serious bodily injury. The second issue that sort of correlates to the first issue is whether or not the District Court committed plain error in not giving a lesser included instruction on assault of a person less than 16 years old that resulted in substantial bodily injury. And the reason I think that they sort of dovetail together is because the record shows that the evidence of serious bodily injury is questionable. In fact, I raise the issue of sufficiency, and the reason for that is there were three aspects to serious bodily injury the government focused on. One was extreme pains, extreme physical pain. The other one was substantial risk of death. And the last one was protracted disfigurement. The record in this case, as far as the extreme pain, rests on the victim's testimony that the injuries were like being hit a thousand times. And he said he was choked and passed out. And he said he was choked and passed out. And that's, yes, that's interesting because Dr. Stevens had two phases in strangulation. One is 30 seconds to a minute and a half. That's where a person passes out. The next phase is three minutes to five minutes. But we're not the jury on this argument. We're looking at whether any reasonable juror could have found the evidence demonstrated the serious bodily injury in the light most favorable to the United States, right? Yes. And moving to your third, the third prong, and you did not ask for anything. You didn't ask for a special verdict, right? Mr. Scott did not, no. So when we're going to Dr. Stevens, Dr. Stevens in, I think, ER 261, talking about would the marks be consistent with someone being choked by a sweatshirt? They very well could be. I want to talk to you about strangulation. Is that something around somebody's neck and tightening? Is that called strangulation? Yes. Does strangulation present a serious risk of death? Yes. So how does that not, putting even aside the first two parts of serious bodily injury, how does Dr. Stevens' testimony in the light most favorable to the government not end the inquiry for us? Because he clarified that. And he was asked by the prosecutor at what point does a person pass out, which is what Mason's testimony was, was that he passed out. And Dr. Stevens said anywhere from 30 seconds to a minute and a half. And then the prosecutor asked at what point is there brain damage? Will brain damage occur? And Dr. Stevens said between three and five minutes. So Mason's testimony, the victim's testimony, establishes a temporary loss of a function of a bodily member, but not a protracted loss nor damage that would cause a serious risk of death. At some point do you lose consciousness? Yeah. And where did you come to? In a shower? In a cold shower? Crying? Yes. And that's temporary loss of a bodily member. That's why I believe given the jury just one alternative of serious bodily injury, because this was a serious case, obviously, but just having the one alternative deprive Mr. Scott of the second alternative, which was the substantial bodily injury. So moving to that, explain to me how – I'll ask it in two parts. How do you get around Pierre, the case? And second, do you have any case from any circuit court which says you can get a lesser in this circumstance where you have an element of the lesser, which here was a domestic relation partner or somebody under 16, which is admittedly not an element of the greater? Do you have any case which says you get a lesser on that, and how do you distinguish Pierre? In this case, there's no – yes, no circuit case that says that A7 is a lesser included of A6 under 113. However, the statute's pretty clear. The statute itself is clear, is that substantial bodily injury is a subset of serious bodily injury. It is, and I think that there are probably some state jurisdictions where you would win on this issue. But I don't see it federally, because I think the law is very clear, whether you call it a Blockberger-type analysis or something else, because this element in the lesser is not part of the greater, and you can prove the greater without regard to domestic partner relations or somebody under 16. I don't see how you get around Pierre, even if factually here there was an argument for the lesser factually, but I don't see it under Pierre. Well, I'm going under United States versus aren't, which is cited in my opening brief, and that is the two-part test for determining whether a lesser included should be given, and that is whether the elements of the lesser are a subset of the greater. And so each of the elements are a subset of the greater. But factually, because the victim, the putative victim, was under 16, they are factually a subset but not legally. I think that's the issue that I think has to be determined. Is it a legal subset? I think it was determined in Pierre. I think that it was determined in Pierre that you're not entitled to a lesser here, but I do understand your argument. Okay, okay. So I'd like to turn you to your, what I'll call your FRE 608 argument, and I'm going to be asking your friend some questions about this too, where the district court told your client that if he was questioning the credibility of witnesses, even if he didn't testify, there would be people who could comment on his credibility. Yes. And so what I want to ask you is this. I don't have any trouble with your argument that this was error by the district court, but I have gone through in detail the transcript, and I do not see any testimony that your client proffered that he wanted to get in that was even arguably admissible that the judge kept out. So I have all the transcript in front of me. So even if I could get to error, I'm having trouble getting to harmless error because I can't see one instance for any of these witnesses where your client said, he or she is going to testify to this, and the prosecution said anything other than, if it's limited to that, fine, other than stuff your client withdrew. So if you got something there, I'd like you to point it to me from the record, something your client wanted in that the judge kept out. Your Honor, what he wanted in, and it's in the pretrial discussions. I'm not talking about the pretrial discussions. I'm talking about he made offers of proof to the court. He said what he wanted in starting at ER 360, and he went through every single witness, and I don't see anything in there that he said he wanted in that the judge kept out that was even arguably admissible except for things that he withdrew. He didn't ask any of the witnesses about Mason's character for truthfulness. Not my question. Maybe I'm misunderstanding. Maybe. My question is he made an offer of proof as to what he wanted to ask about, and there is nothing in there that I saw in his offer of proof that the judge said you can't get into or that the prosecution said it would object to, and I didn't see him asking these kinds of where he was proffering this, he's a liar. Okay. So what you're asking me is during the examination of the witnesses, is there anything?  During his offer of proof. Is there anything that the judge kept out or anything that he put in his offer of proof that he could have been deterred from putting in there by the judge's comment? Yes, asking each one of the witnesses whether or not Mason was credible. Where's that in the record? 3 ER 361-66? I think he outlined. I don't know what you mean by dash 66. At ER 3. I'm looking at ER 361 and I see line numbers on the left. Yes, so it's 361 ER. Yes. And through 366. Oh, I see. Well, I still don't see it. I mean, I have this all in front of me, and on 361 he says, for example, what Mr. Azure or Azure is going to testify to, and they ask the government, any objection to Mr. Azure's testimony at this point, Ms. Paisley? No, Your Honor. So he made this offer of proof on 361 as to Mr. Azure. Asked the government any objection. The government said no. Same thing in general with the other witnesses except the ones that he withdrew. Well, it's also in his subpoenas, Your Honor. Yeah, but I don't think you get to go with the subpoenas. I think you have to go with what he made the offer of proof to the judge as to the judge asked him for an offer of proof. He was choosing to proceed without counsel. He had the assistance of backup counsel, but the judge asked him, what's your offer of proof as to everyone? And he made an offer of proof as to everyone. I think that's what we need to go by. Well, I'm not sure about that because the judge made it real clear, Mr. Scott, you cannot ask any questions or I'm going to let the government or I'm going to let the prosecutor ask about your credibility. Yes. I want to take a step back because I'm not sure I agree that there was any error there. I mean, I'm looking at 366.  The client says, but only if I testify. The court says, only if you testify. Yes. So why isn't that sufficient? Because after that, the court clarified, if you ask questions about the victim's credibility, I'm going to allow the prosecutor to ask the witnesses about your credibility. You're referring to cross-examination. You're referring to page 367 where the court says, through cross-examination of your witnesses or cross-examination of you if you choose to testify. Yes. And then the government, the prosecutor told the court that if he gets into the credibility of Mason during direct examination, that they were likely to object. And that's when the judge then clarified and said, if you ask questions of your witnesses about credibility of Mason, then they get to ask questions of your witnesses about your credibility. In that regard, you're looking at 368 where the judge said, and if you go to credibility again, Ms. Paisley can then ask those witnesses about your credibility. And then he said, do you understand? And Mr. Scott said, yes. And thereafter, Mr. Scott didn't go into any credibility questions with his witnesses. I think that's tantamount to a district court, a trial court, making a definitive ruling on a motion in limine that doesn't have to be preserved through the questions at trial. See, I disagree with you there. The judge went through, what are you proffering? What is your offer of proof? And what you're saying that he couldn't present was never in his offer of proof or objected to. I mean, things like these witnesses that the victim was into self-harm, he was into reckless behavior, all these other things that they wanted to talk about. They never saw him injured in the care of your client. All of those things which your client made an offer of proof about, the government didn't object. But it appears to me the record that the district court understood these witnesses were credibility witnesses. Otherwise, that discussion was unnecessary about whether the prosecutor could cross-examine his witnesses about the victim's credibility. I think the record shows that it was understood that that was one part of the witness's testimony. So that's ‑‑ Okay. I understand your argument. Thank you. But honestly, I just don't see it in the record. Understood. The other issue is the jurisdictional issue because of the change in language in 18 U.S.C. 113. Excuse me. The Major Crimes Act issue. Major Crimes Act 1153. And that's the language that in March of 2013 made change the language significantly to include any felony under Section 113 as part of the Major Crimes Act instead of the listed assaults that were listed prior to that, which included assault with a deadly weapon, assault with intent to kill, assault resulting in serious bodily injury, and then the misdemeanor assault of a person under the age of 16. They took that language out and replaced it with any assault or a assault. So, Counsel, how do you distinguish United States versus other medicine? Because other medicine was operating under the language ‑‑ notwithstanding the amendments. No, I do not, actually, because I think the amendment changes things. I think the amendment adds the assault under 113A7 as part of the Major Crimes Act, and so then it narrows down what type of child abuse and neglect crimes can be committed or can be charged in federal court. And every state has different child abuse and neglect crimes. Even Montana has a separate crime for child abuse. Can you point to any case where a court has ruled, and I'll use what may be an inexact term of art, that Congress, through the 2013 amendments, intended to occupy the field in this area? Other than the amendment itself. Yes, have you any case that says that? No, I do not. However, I think other mother does actually support the proposition that I'm presenting. Other medicine? Other medicine, excuse me. No, it's okay. Other medicine does support the proposition that I'm presenting, and that's because the listed crimes in the Major Crimes Act are those crimes that fall within the federal jurisdiction, and those crimes that are outside of the federal jurisdiction are those that aren't listed in the Major Crimes Act. And 113A7 is now one of the listed crimes. And the crime that was charged against Mr. Scott was a state crime for assault against a child. The Major Crimes Act now incorporates the federal law into that. So I believe that other medicine is not controlling in this case. I think that that decision does not control this panel. I think this panel now with the change in the statute can decide and go contrary to other medicine, I believe, because I believe that's a significant change in the statute after other medicine was decided. The resentencing issues are pretty clear. The government conceded on the crime of violence. The government did concede, and I'm going to ask the government about that. Have you read the court's relatively recent in-bank decision in United States versus Begay? I read it, but it's not on the top of my mind right now. Okay. Well, you're certainly right that the government has conceded, so I think I'll direct my questions in this area to the government. Okay, thank you. And then, Your Honor, all I have to say about this Beady trial issue is that I believe, or the pre-indictment delay issue, I believe that Mr. Scott did present evidence of prejudice, which makes this case different than Corona verbera, and I think that that evidence of prejudice is at 5 ER 527, where his investigator indicated that he had attempted to contact numerous witnesses, but they are non-responsive. The ones who have responded state they can't remember anything primarily due to the passage of time and because they were drunk. Did you on this area, not you, but did your client or standby counsel, did they submit any affidavits or declarations to the district court to support what individual witnesses would have said had there not been the delay that you have claimed is too long? He did not. So given that, and given the abuse of discretion standard on this issue, how can we rule in your favor without your client or standby counsel having made that record? Well, I think at a minimum maybe a remand is due, and here's why. Here's why I think a remand. U.S. v. Lovasco, 41 U.S. 783, talks a lot about the case, Marion case, which is that 404 U.S. 307 at 324-325. And here's the point that I tried to make in my opening brief, and I don't think I did it very articulately. But Lovasco says the due process inquiry must consider the reasons for the delay, must consider the reasons for the delay, as well as the prejudice. At no time did the government ever explain the reasons for their delay, and I think there was sufficient prejudice shown by Mr. Scott with that excerpt from the record that I said that at least a remand is necessary to have the government explain the reason for the delay, because Lovasco does recognize a short delay could be prejudicial or a long delay could be prejudicial. And it says it must involve, the inquiry must involve the reason for the delay as well as the prejudice. So I really believe that that's the distinction between this case and the Corona-Verbera case, because at least Mr. Scott showed some actual prejudice, whereas in Corona-Verbera there was no prejudice shown whatsoever. So that's the difference. I see that I have 48 seconds. No, you're actually over your time. Oh, am I? But, counsel, so two things. If you have a final point you want to make, that's fine, and because I took so much of your time with my questions, I will give you some time for rebuttal. But if you have a final point you want to make, go ahead and make it. Just a couple on the obstructing justice enhancement. I really believe that the quantum of proof that's required in federal court should be the test for an enhancement for perjury, and that's because the guidelines themselves say there's a limitation on using this enhancement based on a defendant's testimony unless it constitutes perjury. So I do think the two-witness rule, one-witness or other evidence rule should apply, and they didn't have that in this case. The last thing is that the district court said at 7ER993-994 that it appears to be double-counting, but that's the way the sentencing guidelines are. So the district court made the finding that this is double-counting and that the incident, the assault, the aggravated assault and the serious bodily injury were a result of the same incident. So, counsel, we haven't opined on this question yet, but you're aware that the Tenth Circuit in gin went the government's way? No, but I'll take a peek at that case too, Your Honor. Okay. So as I say, I'll give you two minutes for rebuttal. Thank you. Thank you, Your Honor. May it please the Court, Tim Tatarka for the District of Montana on behalf of the United States. I'm happy to discuss the issues any order the Court wants, but unless you'd rather direct me some other way, I'll just go through it the way that he did. With respect to sufficiency of the evidence, as Judge Bennett notes, the standard of review here is sufficiency of the evidence. You look at the light most favorable to the jury's verdict and ask whether any reasonable fact finder could provide that. The victim's testimony alone at excerpts of the record 133 through 136 is in itself sufficient that he was choked out to the point where he was out long enough for Mr. Scott to undress him and put him into the shower when he came through. And I think it's a fair inference that the reason why he came through in the shower was because Mr. Scott himself had realized that he was choked into unconsciousness. And again, that is corroborated by the evidence or medical testimony, excerpts 262 and then 272, as Judge Bennett notes, that choking is a risk of death. The other point that I think is really important to raise is appellant relies heavily on the fact that the victim didn't testify as to when he was hit in the nose, but I would note, and this is at 259 of the record, the break to the defendant's nose is to the bridge of the nose, which is entirely consistent with being hit in the eye. And again, looking at the light most favorable to the jury's verdict, that evidence there, which the medical testimony was consistent with being done a week before, which was when the event occurred, is sufficient to show both the disfigurement and the severe pain. So that testimony is there. Then moving on to the lesser included, again, as Judge Bennett noted, Pierre really decides this case at 875 of the federal reporter there, makes clear that when we talk about what a subset of the elements are, it is a comparison of the statutory elements of the crime, not the particular conduct at issue. And here, there's simply no question that you can commit the crime of assault resulting in serious bodily injury without committing the crime of assault resulting in substantial bodily injury of someone under 16 or a domestic partner, and that really answers that question. Moving on to the issue, the 608 issue. All right, so let me start with my preliminary, my first question. I will tell you I am troubled, very troubled by what the court told the defendant. So my first question is, because this was not entirely clear to me from the United States' brief, does the United States concede that what the court told the defendant was error? It was incorrect that if Mr. Scott did not testify, that his witnesses could be cross-examined as to his character for truthfulness. All right, so putting aside for a minute the issue of harmfulness, why isn't that error plain? So even before we get to the issue of harmfulness or plain error, that question is not reviewable, it is not preserved in order to be reviewable. And the reason for that, the problem with Mr. Scott's argument is he was not precluded from eliciting any testimony, and no testimony was excluded, and no improper impeaching or character evidence was ever elicited. So what he's left with is this, essentially his claim has to be that he was discouraged from presenting testimony that he could have presented because of the possibility of impeachment or character evidence. And this Court and the Supreme Court has made clear that that error is too speculative to be able for an appellate court to review. Would it be your position that it would be too speculative for review if he had put it in an offer of proof? I believe, would believe so. Well, that's the problem I have with your argument, because what he would have to risk under what the Court told him is by actually asking the question, the Court told him, well, I'm going to let everybody who testifies testify that you're a liar. And is the government saying, even though he hadn't testified, so is the government saying that he had to risk that in a trial where he's facing decades in prison before he could preserve it, when what the Court told him was clearly error? I don't think that scenario is any different than the scenario in Luce or the scenario in Williams or in the D.C. Circuit case, Coumaris, that it's simply too speculative. But as the Court said in Luce, it's speculative on both sides. It's speculative both in terms of what evidence, what decisions would have motivated his, the evidence that he elicited from the witnesses or could elicit, as the Court noted, what evidence was actually admissible. Although here, this really impacts a defendant's basic constitutional right to testify in his own defense. And what the judge is basically impacting that testify, not testify, present evidence, present witnesses in a very fundamental way with what in my view is an extremely erroneous statement on multiple occasions to a pro se defendant. Well, Your Honor, the basic right to testify in your own behalf, that was absolutely at issue in the Luce case. But as the Court noted in that case, and it is definitely true here, lots of decisions go into that issue of whether a defendant is going to choose to testify on his own behalf or what strategic decisions a defendant is going to make in terms of eliciting testimony from witnesses. And at the same time, lots of strategic decisions go into the question of whether or not the government is going to impeach or create character evidence, even if it's permitted to do so. I think that kind of works against you a little bit here because, yes, there's a lot of strategic questions into whether you testify on your own behalf. But I'm not sure there's near the strategic questions assuming that they hadn't made the error here, that the district court judge had not made the error and said even if you don't testify, people will be able to say you're a liar if you try to undercut the credibility of the victim here. There's not a lot of, if that mistake had not been made, there's not a lot of strategic questions as to whether or not you want to try to paint the victim as a liar, right? If he hadn't had this risk hanging over him, then why wouldn't you do that if you're the defendant? Well, I think there's a couple clear examples in this case. At excerpts of the record 375, again, as this discussion proceeded, this happened at 366, at 375 and preceding that, Mr. Scott was, initially wanted to present this affidavit that he authored and signed, but he claimed constituted Doe's allegations against their sister. The court goes through this discussion with him about what testimony he would have to lay. The court helpfully pointed out to him that it might portray him as a liar to the jury if he offered this and he made what I think is the intelligent decision to say, actually thinking about that, Your Honor, I don't want to use it. Correct. And I think that goes directly to Judge Van Dyke's point that he was making strategic decisions about what he wanted to include and not include, and especially given that he's a pro se litigant, what he could elicit. I don't think there's any evidence that he wanted to ask the question, sort of in the straight 608 sense, what is the reputation of Doe as to truthfulness in the community? I think he was making strategic decisions about what he wanted to elicit and that went beyond just this question of whether he would do so in light of the impeachment. But whether you're right about whether it's reviewable or not, I take it the government also, in addition to its view of the evidence as a whole, also argues that there was nothing actually in his offers of proof that the government didn't object to that went to this point. Absolutely, Your Honor. And in fact, at Excerpts of the Record 390, he did elicit evidence going to... Without objection. Yes. Not only without objection, but without any responsive impeachment evidence by the government. I don't want to distract you from your flow, but I do have one question that I want to ask. I think this is the most important issue. I want to make sure I understand that the government's position on the assaults here not being crimes of violence under the Supreme Court's decision, that the government's position on this has not changed since it filed its briefs? It has not. All right. So you want us to send it back for resentencing with the recognition that this can't count for that enhancement? Yeah. To send back the child abuse case. Yes. The one, not the other. Exactly. Yeah. And our position is that under Borden, assault resulting in serious bodily injury does not have the requisite mens rea. Including because we have to use the categorical approach? Correct. Because the jury here was instructed it had to be an intentional act. Yes. And I... But that doesn't matter under the categorical approach. That's correct, Your Honor. I would just move on to the Major Crimes Act case. Other medicine is the law in this circuit. The child abuse or neglect is a crime that is defined and punished by Montana law by assault of a minor. And nothing in the subsequent amendments changes that. And that's clear on the face of Congress's amendments. Congress inserted the 113A crimes and actually deleted out the crimes that it considered were as redundant without any change to the child abuse or neglect provision. And appellant also sort of misunderstands or mistakes 1153B. The question that the court asks or that Congress puts there is if a crime is a crime under federal jurisdiction, exclusive federal jurisdiction, you look to federal law. If not, you look to state law. Whether or not 113A.7 was included in the Major Crimes Act, it was federal law at the time, both at the time that child abuse or neglect was put into the Major Crimes Act and when other medicine was decided. So there's nothing that has changed in that regard. And the Supreme Court has been clear that the same conduct can be charged under multiple provisions of the Major Crimes Act. So the new addition of 113A.7 doesn't change anything. With respect to the pre-indictment delay question, this simply is an issue of where the appellant has not shown that there was actual prejudice. The only statement he has put forward is a statement by his investigator or the investigator of the attorney that he had, saying that witness testimony was affected by the passage of time and the fact that some of the witnesses were intoxicated at the time of the event. So even setting aside, we don't know what that testimony would have been even the day after, given the intoxication issue. That is very much just a general allegation of the passage of time, which Corona Verbena and the many cases preceding it. Would it have made a difference if he had specific affidavits from three people saying pretty much the same thing, put aside the intoxication part? But I just don't remember what happened because a long time has gone by. No, what he would have needed was affidavits essentially saying affidavits I remembered back then, I don't remember now. They may not remember what they remember. No, I understand, but that's, and again, this is at Corona Verbena, particularly at page 113. The primary defense against just the loss of testimony due to the passage of time is the statute of limitations. In order to go into, for the due process clause to be evoked there, there does have to be evidence of actual prejudice. So some reason to believe something that was actually favorable was actually lost. So the inquiry might be different under the Speedy Trial Act. Yes, absolutely. But that's not constitutional. I mean, the Speedy Trial Act as opposed to your Sixth Amendment rights are different and judged differently. Well, but even the Sixth Amendment, even your Sixth Amendment rights don't start until a prosecution is initiated. The pre-indictment issue is a Fifth Amendment due process issue. Yes, but it's constitutional. Yes. And then just quickly with respect to the bodily injury question enhancement, I would note that the standard of review there, or the standard the court had to apply was simply to find a serious bodily injury by a preponderance of the evidence. And there's abundant evidence in addition to the sexual assault. But they're also making a double-counting claim. Yes, but there's substantial evidence that there was injury separate from the sexual assault. Right, but they're making a claim that a two-level increase for serious bodily injury is improper double-counting because the base offense already accounts for serious bodily injury. Yes, and I think the best place for the court to look there is both the Bell case and Long Turkey. Distinguish that earlier case of Guy where there are places in the guidelines that say aggravated sexual abuse is sort of per se serious bodily injury when the underlying crime is aggravated sexual abuse, there has to be independent evidence of the serious bodily injury. And that is what the Tenth Circuit, I believe, said in June.  And if I may, Your Honor, on the final point, the obstruction charge, this is much different than a case in which the defendant was given an enhancement because he denied the crime on the stand. Mr. Scott testified on the stand that he lied to the officers saying that he had consensual sex with the victim here. That is much different in terms of the basis for obstruction and nothing like a claim that was simply the fact that he testified to deny the crime. All right. Thank you, counsel. We'll, as I said, we'll give you two minutes for rebuttal. Thank you, Your Honor. So it seems to me that the record in relation to the proffers, in relation to the witnesses that would have testified about the credibility of Mason, that the discussion in the record wouldn't have been had it not been clear to the judge and had it not been clear to the prosecutor that that was Mr. Scott's tactic and that's what he was going to do. That's the only reason that discussion would have been made. So whether Mr. Scott made an articulate proffer or not, it was a clear understanding by the district court and a clear understanding by the prosecutor that that was the tactic that Mr. Scott was going to employ with his witnesses. There were two components to Mr. Scott's defense. One was he didn't do it. Number two was Mr. Mason was not credible. He was deprived of the second component, but he was also deprived of the first because the district court wouldn't subpoena Carlo, who Mr. Scott was trying to explain to the court, was with Mason all the time and was outside with him. I think what he meant, you know, I don't know exactly, but he was outside when the injuries did occur because they were said to have occurred by hickey bobbing. As far as the serious bodily injury in the second case, the judge didn't make a separate finding. The judge basically said it is double counting, but I'm not going to do it. So there's no separate finding by the district court that these injuries resulting from the aggravated sexual abuse were actually different and set apart. Your view on that is even if we were to find that it's legally permissible, we would still need to send it back for the judge to make requisite findings. I think in this case we should because the victim said everything occurred at the same time. So you have two arguments. Your argument is, one, you can't do it at all, but even if you can, the judge didn't do it right. Or at least determine whether he's doing it right because I understand where this court is coming from based on this record, but I think the district court has to have the shot at maybe viewing it with an entire record before it. So that's the reason why I think perhaps a remand. And I do believe strongly that obstruction does need to be proved by two witnesses or one witness and other corroborating evidence. Thank you. All right. We thank counsel for their arguments and the case just argued is submitted. And with that, we are adjourned for the day. All rise.
judges: BENNETT, VANDYKE, THOMAS